I.
Procedural History
This matter arises out of a Request for Good Standing Determination (“Request”) Filed with the Council of Elders (“COE”) on December 3, 2008 concerning William Bauer, the Request alleged that Mr. Bauer posted private Tribal information on his publicly-aeeessible website (known as “Brokenwing Editorials”), and in so doing, caused harm or detriment to the Tribe (hereinafter “Tribe”) and violated Tribal law and/or policy. Mr. Bauer received appropriate notice of the Request in accordance with Mohegan law and was advised of his right to request a hearing. Mr. Bauer then filed a lawsuit in the Michigan Tribal Court on December 22, 2008 (No. CV-08-0138) alleging that the Good Standing proceedings initiated through the filing of the Request violated the Mohegan Constitution and the Mohegan Court System Ordinance and further alleging that the Good Standing provisions of the Membership Ordinance are unconstitutional. On December 17, 2008 Mr. Bauer requested injunctive relief from the Tribal Court to prevent the COE from conducting the Good Standing proceedings and the Tribal Court issued an Order to Show Cause to the Tribe and COE on December 21, 2008. *216 Mr. Bauer requested a hearing in the Good Standing matter on January 8, 2009.
Following a hearing, the Mohegan Tribal Court denied Mr. Bauer’s request for injunction on February 6, 2009. A pretrial conference was held on February 19, 2009, in which the parties agreed to a stay of the Tribal Court proceedings pending completion of the initial Good Standing hearing before the Hearing Panel and any appeal to the COE.
Consistent with the Enrollment and Membership Office Rules and Procedures (“Rules”), Mr. Bauer received a hearing before the Good Standing Hearing Panel (“Panel”) of the COE. While Mr. Bauer did not contest the facts regarding the conduct he was alleged to have engaged in, he did contest the constitutionality of the Good Standing proceedings, the Good Standing provisions of the Membership Ordinance, and the Rules.[1] Mr. Bauer’s constitutional claims were essentially the same as those set forth in the matter pending in the Tribal Court in No. CV-08-0138, i.e., that the good standing provisions of the Tribe’s Membership Ordinance violated his rights to due process pursuant to the Indian Civil Rights Act, 25 U.S.C. Sections 1301, et seq., as codified in the Mohegan Constitution at Article XI. The Panel issued a Recommendation to the COE on March 20, 2009, which included analysis of Mr. Bauer’s constitutional claims in addition to addressing the merits of the Good Standing matter itself.
Mr. Bauer appealed the Panel’s Recommendation and was granted a hearing with the full COE on April 8, 2009. Mr. Bauer again raised constitutional claims in asserting that the full COE should not adopt the Panel’s Recommendation. On April 29, 2009, the COE issued a Determination adopting the Recommendation of the Panel and addressing the constitutional issues raised by Mr. Bauer.
In its Determination, the COE found the allegations against Mr. Bauer to be substantiated and sanctions were imposed. He has been ordered to provide a written apology to the Tribal membership for the publication of private Tribal information on his website. He has been excluded from Tribal meetings and functions for one year.[2] He retains all of the other rights and privileges of membership, including the rights to vote and to seek elective office, the benefits of housing, healthcare, use of the Tribal gas card, etc., and the privilege of being present on the Mohegan reservation with the exception of tribal meetings and functions. He continues to live on the reservation and receive distributions in accordance with the Tribe’s Revenue Allocation Plan as well. He has not been excluded from social functions at the Ft. Hill Elder Housing community where he resides, with the exception of one *217 function specifically hosted by the Council of Elders known as the “Elders’ Circle.”
Prior to the scheduling of the follow-up pre-trial conference in CV-08-0138, Mr. Bauer filed an Amended Complaint and Request for Injunction with the Tribal Court on May 4, 2009. The Tribal Court then scheduled the pre-trial conference for 10:30 a.m. on May 6, 2009 and scheduled a hearing on Mr. Bauer’s Amended Complaint and Request for Injunction at 1:00 p.m. the same day. Immediately following the hearing on May 6, 2009, the Tribal Court issued an injunction, holding that Bauer’s due process rights had been violated when he wras not allowed to cross-examine witnesses in the Good Standing proceedings.
The Tribal Court’s Decision and Order of May 6, 2009:
1. ordered the COE and the Tribe to remove the text of the Council of Elders’ Good Standing Determination involving Tribal member William Bauer from the Tribal website (the “Talking Stick”);
2. prohibited the COE and the Tribe from posting anything to the Talking Stick concerning William Bauer, including the Good Standing Determination, the Resolution adopting the Good Standing Determination, and the reprimand ordered by the Determination until further order of the Tribal Court;
3. issued a temporary injunction restraining the COE and the Tribe from implementing any penalties arising from the Good Standing Determination, the Resolution, and reprimand until further order of the Tribal Court;
4. found no bond should be required from Mr. Bauer;
5. ordered the Tribe and COE to take steps to prevent publication of matters relating to the Good Standing Determination in Wuskuso; and
6. ordered the Tribe and COE to submit written confirmation to the Court that all materials posted on the Talking Stick have been removed.
On May 8, 2009, the Tribe filed a Petition with the COE for the entry of an Order or Writ of Superintending Control concerning a Decision and Order entered by the Mohegan Tribal Court on May 6, 2009 in CV-08-0138 (hereinafter “Petition”). The Tribe requested that the Mohegan Tribal Court’s Decision and Order be vacated and that all proceedings in CV-08-0138 be dismissed.
Upon the filing of the Petition, the COE issued an Order of Stay with regard to the Tribal Court’s Decision and Order of May 6, 2009, pending a hearing. The COE subsequently received a responsive pleading from Real Party in Interest William Bauer; no responsive pleading was received from the Tribal Court. The Tribe filed a Memorandum in Support of Petition for Writ of Superintending Control and in Reply to Response of Real Party in Interest. Mr. Bauer filed a Reply to the Mohegan Tribe’s Memorandum; the Tribe filed a Reply to one point contained in Mr. Bauer’s reply; and Mr. Bauer objected to the Tribe’s final Reply as untimely.[3] The Council of Elders detemrined that oral argument would not be required.
*218 Upon motion of the Tribe, the caption of this matter was amended to properly reflect the status of the Respondent Court and Real Party in Interest by Order of the COE dated May 26, 2009. The change in caption did not affect the substantive rights of any of the parties to this action.
II.
Jurisdiction of the COE
In accordance with Article X, Section 1 of the Mohegan Constitution, “all judicial review powers of the Mohegan Tribe not exercised by the Gaming Disputes Court shall be vested in the COE and in such subordinate commissions and/or courts as the Tribal Council may from time to time ordain and establish.”
The subject matter jurisdiction of the COE is set forth in Article X, Section 2 of the Mohegan Constitution. The Constitution’s grant of jurisdiction extends to “cases and controversies arising under this Constitution and arising under all laws of the Mohegan Tribe.” The constitutionally-imposed restraints on this jurisdiction are: 1) a prohibition as to the issuance of advisory opinions; 2) a prohibition as to deciding moot cases; and 3) a further limitation contained in Article XIII. Article XIII, Section 2 provides for the establishment of the Gaming Disputes Court and vests the Gaming Disputes Court with:
exclusive jurisdiction for the Tribe over disputes arising out of or in connection with the Gaming, the actions of the Tribal Gaming Authority, or contracts entered into by The Mohegan Tribe or the Tribal Gaming Authority in connection with Gaming, including without limitation, disputes arising between any person or entity and the Tribal Gaming Authority, including customers, employee's, or any gaming manager operating under a gaming management agreement with the Tribal Gaming Authority, or any person or entity which may be in privity with such persons or entities as to Gaming matters.
Aside from these three limitations, there are no other Constitutional restraints on the judicial jurisdiction of the Council of Elders.
The Tribal Court is a subordinate court created by statute in accordance with Article IX, Section 2(o) which empowers the Tribal Council to establish a court system, and to define the powers and duties of that court system. While the creation and jurisdiction of the Gaming Disputes Court is established in Article XIII, Section 2; the Tribal Court is created and its jurisdiction established statutorily through the Tribal Council’s adoption of the Mohegan Court System Ordinance.
The subject matter jurisdiction of the Mohegan Tribal Court is set forth at Section 1-17 of the Mohegan Court System Ordinance, which provides as follows:
[Sjubject to any contrary provisions, exceptions, or limitations contained in either an applicable federal law, the Mohegan Constitution, or as specified in Section 1-18 of this Article, the Mohegan Tribal Court shall have jurisdiction over all civil causes of action for which the Tribal Council enacts enabling legislation or grants the Court jurisdiction by contract -with the express waiver of sovereign immunity contained in this Article, and over all offenses prohibited by Mohegan Tribal law.
The Mohegan Court System Ordinance recognizes the existence of constitutional constraints on the subject matter jurisdiction of the Mohegan Tribal Court. One of the constraints is found at Article X, Section 1 which provides that the courts created by the Tribal Council are subordinate to the COE. A subordinate court cannot overrule determinations of the *219 Tribe’s highest judicial body. Eldred v. Mashantucket Pequot Gaming Commission, 4 Mash. 10, 3 Mash.Rep. 140 (1999) (It is well settled that on demand from an Appellate Court, a Tribal Court “can not deviate from the direction given by the Appellate Court.” Citing Connecticut National Bank v. Zuckerman (internal citations omitted)).
Real Party in Interest William Bauer asserts that certain provisions of the Mohegan Court System Ordinance divest the Council of Elders of jurisdiction in this matter, specifically, sections 1-89 through 1-92 which provide for the use of a “Special Panel” to hear cases arising out of the Council of Elders’ exercise of legislative or regulatory authority.[4]
The Tribe has asserted that the Special Review Panel provisions of the Mohegan Court System Ordinance are inapplicable to the instant case, in that the COE was acting in a judicial capacity, as opposed to a legislative or regulatory capacity, when it decided the Bauer Good Standing matter. However, Mr. Bauer’s amended complaint in CV-08-0138 requested that the Tribal Court rule on:
*220 1. the constitutionality of Chapter 31, Section 31.24, parts (a)(6) on its face and (a)(8), as applied to Plaintiff, of the Mohegan Tribal Code;
2. the constitutionality of the process and procedures of the “Good Standing” forum/court; and
3. whether the Council of Elders by sitting as a “Good Standing” forum/court violates the Mohegan Constitution and the Court System Ordinance by removing the Council of Elders of their duties as the supreme review body that would otherwise be available to Plaintiff and other Tribal members in exercising their rights under the Court System Ordinance.
In addition to asserting claims which question the constitutionality of legislation enacted by the COE, Mr. Bauer named the Council of Elders as a Defendant in CV-08-0138, an act which would also serve to invoke the use of the Special Panel in accordance with Section 1-90 of the Court System Ordinance.
The subordinate courts of the Tribe are empowered to look to the case law of other jurisdictions in reaching their decisions where no Mohegan law exists on point. Similarly, in assessing the relevant provisions of the Mohegan Constitution and the provisions of the Court System Ordinance pertaining to the creation of the special panel, we are informed by early United States Supreme Court case law concerning the power of judicial review:
It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each. [5 U.S. 137, 178, 1 Cranch 137, 2 L.Ed. 60 (1803)] So if a law be in opposition to the constitution: if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law: the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty. If then the courts are to regard the constitution; and the constitution is superior to any ordinary act of the legislature; the constitution, and not such ordinary act, must govern the case to which they both apply.
Those then who controvert the principle that the constitution is to be considered, in court, as a paramount law, are reduced to the necessity of maintaining that courts must close their eyes on the constitution, and see only the law.
Marbury v. Madison, 5 U.S. 137, 177, 178, 1 Cranch 137, 2 L.Ed. 60 (1803).
To the extent that provisions of the Mohegan Court System Ordinance conflict with the Mohegan Constitution, the provisions of the Mohegan Constitution take precedence. The Constitution is the supreme law of the Tribe and its provisions cannot be amended though legislative acts of the Mohegan Tribal Council or the Council of Elders.[5] Sections 1-89 through 1-92 of the Court System Ordinance are inconsistent with Article X, Sections 1 and 2 of the Mohegan Constitution and, consequently, unconstitutional. Therefore, Mr. Bauer’s claims as premised on Sections 1- *221 89 through 1-92 are invalid. The constitutional constraints on the judicial review authority of the Council of Elders are the three items specified in the Constitution; the Tribal Council may not impose extra-constitutional restraints via legislation.
Additionally, reading all relevant provisions of the Constitution together, specifically Article IX, Section 2(o) and Article X, Section 1, it is clear that, in creating the Mohegan Court System through legislation, the Tribal Council has created “subordinate courts.” The constitutional authority to legislate a system of subordinate courts does not include the authority to create a lateral or superior entity designed to supplant the final judicial review authority of the COE.
Section 1-89 of the Court System Ordinance asserts that there is an inherent conflict in the Council of Elders’ exercise of judicial review authority and legislative/regulatory authority. However, the Mohegan Constitution does not contain any separation of powers provision forbidding the simultaneous exercise of judicial, executive, or legislative authority by a particular branch of government or governing body, not unlike the majority of Tribal constitutions.[6]
Instead, the Mohegan Constitution provides that the majority of legislative and executive authority is vested within the Tribal Council and the majority of judicial authority is vested in the COE. Neither Council is prohibited from exercising any particular type of governmental power as long as the exercise of that power is consistent with the subject matter jurisdiction of the Council involved. This design was intended by the framers of the Mohegan Constitution to preserve the traditional roles of the Tribal leadership in Mohegan governance without regard to whether the authority exercised was characterized as executive, legislative or judicial. See Videotaped Presentation of Stephen L. Pe-var on the behalf of the Falmouth Institute, January, 2001, (comments of Tribal Historian Melissa Tantaquidgeon Zobel regarding the fact that, as a matter of Mohegan custom and tradition, the functions of Mohegan government do not conform to the notions of separation of powers found within three-branch governments).
The fact that the Mohegan government does not strictly separate governmental functions into separate legislative, executive, and judicial branches does not mean that the government functions without checks and balances. Using the good standing process as an example, the authority of the COE to make good standing determinations is founded in Article V, Section 2, which provides that a Tribal member “may be stripped of all rights and privileges attained by him or her as a result of his or her membership within the Mohegan Tribe, as provided for in the Tribal Enrollment Ordinance.”
A Request for Good Standing Determination may be initiated by any individual, with the caveat that frivolous Requests will not be acted upon and may result in sanctions against the requesting party. Information supporting the Request comes from the requesting party and witnesses. A Respondent in a good standing matter is informed of the substance of witness testimony through the Request itself, any attachments to the Request, and the Recommendation of the Hearing Panel. Additionally, the Respondent may present wit *222 ness testimony to the Hearing Panel and, as addressed in Mr. Bauer’s good standing proceeding, may transmit written questions to the requesting parties.
Additionally, any Tribal member facing the sanction of the complete loss of all of the rights, benefits, and privileges of membership would receive a trial-type proceeding before the Good Standing Hearing Panel of the COE.
The Recommendation is not considered by the COE until the Respondent has had an opportunity to appeal. The appeal consists of a hearing before the full Council of Elders. On appeal, the Hearing Panel’s recommendation may be adopted or may be overturned. If the COE wishes to impose sanctions in excess of those recommended by the Hearing Panel, the respondent receives an additional hearing regarding same. Once the appeal is concluded and a Determination reached, the COE must rely on institutions of Mohegan government outside of its control for the implementation of any sanctions. Determinations are reported to the Tribal membership via the Wuskuso, the Talking Stick, and may be viewed by Tribal members in the Elders’ chambers.[7]
In addition to the aforementioned checks and balances, accountability is ensured through the fact that these proceedings are handled by elected officials. The COE is composed of Tribal members aged 55 and older directly elected by the Tribal membership to carry out judicial functions, certain legislative functions, and certain executive functions in regard to their areas of cultural oversight. The COE carries out these functions in accordance with Mohegan custom and tradition and does not view any of the functions as delegable, from initial enactment of the Enrollment and Membership Ordinances to rendering a decision as to the constitutionality of any aspect of the process. In the final analysis, the COE is accountable to the Tribal membership and the Tribal membership is accountable to the COE. This civil system for adjudicating alleged misconduct within the Tribe is a manner consistent with Mohegan custom and tradition is the appropriate tribal forum for adjudicating the sort of due process claims raised in the instant case.[8]
*223 Mr. Bauer also has alleged that the COE violates the Judicial Code of Conduct, as codified in the Mohegan Court System Ordinance, by carrying out the full scope of their constitutional duties. As discussed herein, the “Special Panel” provisions of that Ordinance are not a valid constraint on the judicial review powers of the COE. While the Code of Judicial conduct applies to lower court judges within the Mohegan Court System, the COE is bound by the Constitution, the Mohegan Ethics Law, and the COE Code of Conduct. The Code of Judicial Conduct, codified within the Mohegan Court System Ordinance, applies only to subordinate court judges whose governmental duties are judicial in nature only; it does not, and cannot, address the activities of the COE whose functions are not purely judicial in scope and whose conduct is governed by the Constitution, the Mohegan Ethics Law, and the COE Code of Conduct.
With regard to the specific power of the COE to issue extraordinary writs, the COE notes that it possesses the inherent authority of a court with the final power of judicial review as set forth in the Mohegan Constitution. The COE’s authority as a supreme court does not stem from a delegation of authority from the Tribal Council pursuant to the Mohegan Court System Ordinance; it is an authority rooted in the Constitution as set forth in Article II (the powers of the Mohegan Tribe shall include all of the inherent sovereign rights and powers of an independent, indigenous sovereign nation) and Article X, Section 2 (the powers of the Council of Elders shall include all judicial review powers reasonable and necessary to achieve the tribal goals recited in the Preamble of the Mohegan Constitution and specifically include, but are not limited to, the specific powers set forth in Article X, Section 2).
One of the judicial powers reasonable and necessary to achieve the tribal goals set forth in the Mohegan Constitution’s Preamble is the power to issue extraordinary writs. The Preamble provides that our tribal goals are:
To be answerable to our ancestors;
To secure to ourselves and our descendants the management of our own affairs as a sovereign American Indian Nation;
To secure the maintenance of our basic human rights;
To exercise our sovereign rights as a federally recognized Indian tribe, including the right to self-determination and self-governance; and
To promote the general welfare of the Mohegan People.
The Determination reached in the Bauer Good Standing matter discusses at length Mohegan custom and tradition regarding the protection of Tribal information and the harm caused to the Tribe when private Tribal information is made available to the non-Mohegan general public.[9] The cus *224 tomary Mohegan mode of dealing with behavior falling outside of such norms is reflected in Tribe’s Good Standing process. The Tribe protects basic human rights by maintaining a system in which individuals or the Tribe as a whole may express its concerns regarding harm caused by individuals alleged to have broken norms and by providing a mechanism where their alleged conduct can be examined and addressed while providing them with due process.
As a matter of self-determination and self-governance, it is imperative that Mohegan law as articulated by the COE be recognized and respected. It is only by doing so that the general welfare of the Tribe will be maintained. Consequently, we find that the authority of the COE to issue writs is reasonable and necessary.
The Tribe has also cited the federal All Writs Statute as a basis for our authority to issue the Writ of Superintending Control. There is no need to analogize to federal law in this particular matter for two reasons. The first is that there is clear constitutional authority for the issuance of writs by the COE. The second is that, unlike in the Mohegan system, the Supreme Court of the United States must rely on the All Writs Statute as its authority for the issuance of writs. As determined in Marbury v. Madison, 5 U.S. 137, 1 Cranch 137 (1803), the original jurisdiction of the U.S. Supreme Court only extends to those matters expressly mentioned in Article III, Section 2 of the United States Constitution. The Mohegan Constitution does not distinguish between original and appellate jurisdiction, thus supporting the conclusion that the authority to issue writs falls within the inherent authority of the COE.
III.
Standards for Issuance of the Writ of Superintending Control
The COE has adopted Procedures for Judicial Review, including prescriptions regarding extraordinary writs. The COE may issue a Writ of Superintending Control upon a showing by the petitioner that the lower court has abused its discretion in an egregious way, requiring the intervention of the COE. The petitioner shall further set forth whether any plain, speedy and adequate remedy at law exists.[10]
The Tribe has demonstrated that no other plain, speedy and adequate remedy at law is available. The Tribal Court’s Order of May 6, 2009 was not subject to immediate appeal, because the Tribal Court Rules of Procedure do not allow for interlocutory appeals. The effect of compliance with the Order would have placed the Tribe and the Council of Elders at odds with the Determination of the Council of Elders, which established the controlling law regarding the claims made by Mr. Bauer. The Tribal Court was advised of this during the hearing of May 6, 2009, but did not inquire further into the contents of the Determination.[11]
In examining those circumstances in which other Tribal Courts have considered the issuance of Writs of Superintending Control, an abuse of discretion on the part of the lower court must have occurred and a degree of exigency must exist. See, e.g., In the Matter of A.P. a Minor v. Tuba City Family Court, 8 Nav. R. 671, 6 Am. Tribal Law 660, 662 (2005) (writ of super *225 intending control may be issued when a court abuses its discretion in such an egregious way that only immediate action by this Court will remedy the damage done to a party).
Clearly, exigent circumstances exist in this matter, as good standing cases are usually handled expeditiously. Were there to be a lapse between the reaching of a Determination and the issuance of that Determination, the delay would be taken by the Tribal membership as a clear indication that, the Tribal Court has the authority to lead the Tribe down a path in which the subordinate court may substitute its judgment for that of the elected COE. As the Tribe’s highest judicial body and primary cultural institution, the COE cannot allow such a venture.
The Tribal Court’s May 6, .2009 Order presumes that due process necessarily includes the right of cross-examination. This is a matter which tribal and non-tribal courts have addressed and there is no universal rule pertaining to civil matters. However, it is impossible for the Mohegan Tribal Court to develop the law in this area without acknowledging the unique distinctions in this area and inquiring into Mohegan custom and tradition as required by Rule 19 of the Mohegan Tribal Court Rules of Procedure.[12] It is not a given that cross-examination in a civil matter mandated, nor is the Tribe precluded from tailoring the nature of the proceedings to conform to the severity of the possible penalties. See, e.g., Smith v. James, No. 98AP000011, 2 Am. Tribal Law 319 (Hopi Appellate Court 11/16/1999) (the non-adversarial nature of a trial court proceeding was proper since many elders might be fearful of undergoing cross-examination. An adversarial atmosphere would not foster village participation in these hearings [to ascertain village custom pertaining to land use]). See also, The Honorable Henry J. Friendly, Some Kind of Hearing, 123 U. Pa. L.Rev. 1267, 1283 (1975) (cross-examination not necessarily the best mechanism for discovering the truth).
The Tribe is correct in asserting that principles of stare decisis and res judicata would have precluded the Tribal Court’s disregard of the COE’s decision regarding the due process elaims and its issuance of a decision substituting its judgment for the judgment of the COE. The application of these principles would serve not only to ensure that the law is correctly applied, but also to ensure judicial efficiency. See, e.g., Peabody Western Coal Co. v. Navajo Nation Labor Comm’n, 8 Nav. R. 313, 4 Am. Tribal Law 650 (2003) (the Court will issue a writ when the denial of res judicata wrould result in a party potentially going through an entire trial needlessly if the claim should have been barred.)
The issuance of the injunction in CV-08-0138 did constitute an abuse of discretion and was beyond the authority of the trial court, Acting in the absence of authority constitutes an abuse of discretion. See e.g., Cooter and Gell v. Hartmax Corporation, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 *226 L.Ed.2d 359 (1990) (ruling that “a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law....”) An understanding of the contents of the Determination would have led to the conclusion that Mr. Bauer would not have been able to show a clear or substantial likelihood of success on the merits of his claims before the Tribal Court.[13]
Last, the issue of the Tribal Court’s jurisdiction must be addressed. Mr. Bauer has alleged that the Tribe’s and the COE’s failure to move for dismissal of CV-08-0138 precludes judicial review of the question of whether the Tribal Court had jurisdiction to issue the injunction. The Tribe has responded by noting that, as a matter of law, subject matter jurisdiction cannot be waived and may be raised at any time, and may be raised by the court itself. Fort Trumbull Conservancy v. City of New London, 282 Conn. 791, 802, 925 A.2d 292 (2007) quoting (citations omitted; internal quotation marks omitted) Fort Trumbull Conservancy LLC v. Alves, 262 Conn. 480, 486, 815 A.2d 1188 (2003) and Lewis v. Gaming Policy Board, 224 Conn. 693, 698-699, 620 A.2d 780 (1993).
The Tribal Court has acknowledged that the area of Tribal membership and enrollment, including good standing determinations, is an area “specifically committed to the Council of Elders under Article X, Section 2(j) of the Mohegan Constitution.” See Memorandum of Decision on Motion for Order Sealing Court File in Bauer v. Mohegan Council of Elders, et al. filed May 8, 2009. Additionally, the COE is empowered to hear claims arising under the Mohegan Constitution and all laws of the Tribe. In regard to Mr. Bauer’s good standing matter, Article XI claims were raised before the COE, heard by the COE, and decided in the COE’s Determination. Determinations of the COE constitute Mohegan Tribal law and must be recognized as such.
The COE has both initiated and defended against actions within the Tribal Court as a party. See, e.g., Council of Elders v. Mohegan Tribal Employment Rights Commission, 1 M.T.C.R 3, 3 Am. Tribal Law 450 (Mohegan Tribal 11/29/2001); Seidel v. Council of Elders, 1 M.T.C.R 6, 4 Am. Tribal Law 473 (Mohegan Tribal 05/20/2002). In so doing, the COE has demonstrated a willingness to follow Mohegan law and be accountable to the membership for its decision-making. However, where the Tribe or an individual with standing properly petitions the COE and demonstrates that Mohegan law has not been followed, the COE is obligated to carry out the mandates of the Mohegan Constitution.
IV.
Conclusion
1. The COE may exercise jurisdiction in this matter in accordance with Article X. Sections 1 and 2(a).
*227 2. The Mohegan Court System Ordinance does not divest the COE of jurisdiction in any matter, nor does it allow for materials deemed confidential by Tribal law, including documents and testimony pertaining to Good Standing proceedings, to be disclosed to the non-Mohegan general public through their inclusion in a Tribal court file. Sections 1-89 through 1-92 of the Court System Ordinance are inconsistent with Article X, Sections 1 and 2 of the Mohegan Constitution and, consequently, unconstitutional.
3. The Determination issued in the Bauer matter is dispositive of certain areas of Mohegan law:
a. that Good Standing proceedings, as set forth in Section 31.24 of the Membership Ordinance, are conducted consistent with Mohegan notions of due process, which provides for an adversarial, trial-type proceeding only in instances in which an individual faces the loss of all of the rights and privileges of membership; and
b. that Good Standing proceedings are confidential in accordance with Mohegan custom, oral tradition, and the Membership Ordinance. Determinations are reported to the Tribe via Tribal media in a manner which protects Tribal confidentiality, which means that a Determination is shared with the Tribal membership, but not with the non-Mohegan general public.
4. Good Standing matters are exclusively committed to the jurisdiction of the COE. If an individual wishes to raise Article XI issues regarding a Good Standing proceeding, such issues are properly raised before the Good Standing Hearing Panel, and may be appealed to the Ml Council of Elders.
Based on the foregoing, it is ordered that a Writ of Superintending Control be issued providing as follows:
1. The Mohegan Tribal Court’s Order of May 6, 2009 is hereby vacated.
2. The Mohegan Tribal Court is permanently barred from taking any further action in CV-08-Ü138.
3. Ail proceedings in CV-Ü8-0138 are hereby dismissed.
So ordered.

. Mr. Bauer’s recent pleadings assert that he did not admit the conduct in which he allegedly engaged. Transcripts of the good standing proceedings before the Hearing Panel and the appeal hearing before the Council of Elders indicate that Mr. Bauer did admit posting the information on his website, Brokenwing Editorials, as alleged in the Request for Good Standing Determination. There is no factual dispute as to what Mr. Bauer posted; the only dispute is as to the constitutionality of the Good Standing process.

. A “tribal meeting’’ is an official business meeting of the Tribal Council or Council of Ciders or sponsored by the Tribal Council or Council of Elders (excluding Executive Session), which, while open to Tribal members, is not open to the non-Mohegan general public. A “tribal function” is a social gathering sponsored by the Mohegan Tribe or intended for the benefit of the Mohegan Tribe, whose primary purpose is the interaction of Tribal members with one another.

. The COE's Judicial Review Procedures provide as follows at Section V: “(T]he Council of Elders may adhere to the procedures specified herein with regard to appellate matters, or may issue orders specifically designed to expedite the handling of extraordinary writ proceedings.” In the instant ease, a scheduling order was issued and the parties were provided with ample flexibility to respond to ail pleadings.

. SUBDIVISION G. SPECIAL PANEL REVIEW
Sec. 1-89. Purpose.
Along with judicial review authority, the Council of Elders may also have authority which is legislative and regulatory in nature, as set forth in Article X of the Mohegan Constitution. Potential claims may exist against the Council of Elders for actions derived from these legislative and regulatory functions. The purpose of the Special Panel Review is to eliminate the conflict of interest inherent in the Council of Elders judicial review authority and the legislative/regulatory' authority. The Council of Elders shall not sit as the highest level of judicial review over claims against its own (legislative/regulatory) body. Therefore, any claim against the Council of Elders shall proceed in the regular fashion until it reaches the Court of Appeals. From this point, if an aggrieved party still wishes to proceed to the final level of appeal, a Special Panel is established to hear such claims. (Res. No.2009-06, 10-15-2008)
Sec. 1-90. Authority and Jurisdiction.
The Special Panel shall have jurisdiction to review decisions of the Mohegan Court of Appeals, only if the Council of Elders, in its legislative or regulatory capacity, is a party to a suit in the Mohegan Tribal Court. (Res. No.2009-06, 10-15-2008)
Sec. 1-91. Special Panel.
(a) The Special Panel shall consist of three (3) Special Panel Judges. The Chief Mohegan Ethics Commissioner on an annual basis shall select six (6) qualified persons to serve as judges on the Special Panel. Each person shall possess a Juris Doctorate degree and have experience either as a Connecticut Attorney Trial Referee appointed by the Chief Justice of the Connecticut Supreme Court, a Judge of the Mohegan Court System, the Connecticut Superior Court, or is an eligible retired federal judge or magistrate; must not have been convicted of a felony or any gaming offense; is of sound mind, trustworthy and of good moral character, and is capable of carrying out the duties of the office fairly and impartially, and is willing to commit upon public oath of affirmation to uphold the Constitution of the Mohegan Tribe of Indians of Connecticut. Preference may be given to a person who has knowledge and/or experience in tribal court systems and traditional justice system of Native American tribes.
(b) The Chief Judge shall choose three (3) persons from such list, on a rotating basis, to serve as judges of the Special Panel for a case, when necessary. (Res. No.2009-06, 10-15-2008)
Sec. 1-92. Review Process.
The Review Procedure set forth in Division 3, Subdivision F and such procedures adopted by the Council of Elders are hereby incorporated into this Subdivision. The same procedure shall be followed for a review by the Special Panel, substituting the Special Panel for the Council of Elders, provided that within forty-five (45) days after the appellant applies for permission to appeal the decision of the Court of Appeals, the Special Panel shall convene to consider the application. The Special Panel shall vote upon whether to hear the appeal. If one (1) or more of the Special Panel Judges vote to hear the appeal, permission shall be granted. (Res. No.2009-06, 10-15-2008)

. The only exception to this general rule is found at Article IV, Section 1, which provides that the membership of the Tribal Council and Council of Elders may be increased through enactment of a joint ordinance, approved by a majority of the Tribal Council and a majority of the Council of Elders.

. See www.tribal-institute.org/lists/ constitutions.htm for a list of Tribal Constitutions. Tribal Constitutions containing separation of powers clauses are those which expressly provide for the creation of a three-branch form of government consisting of executive, legislative, and judicial branches.

. These processes are set forth in the Enrollment and Membership Office Rules and Procedures, as amended by the Council of Elders on February 12, 2009.

. Recognizing that tribal institutions exist for the resolution of claims brought pursuant to the Indian Civil Rights Act, the United States Supreme Court in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 71-72, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) stated that:
[B]y not exposing tribal officials to the full array of federal remedies available to redress actions of federal and state officials, Congress may also have considered that resolution of statutory issues under § 1302, and particularly those issues likely to arise in a civil context, will frequently depend on questions of tribal tradition and custom which tribal forums may be in a better position to evaluate than federal courts. Our relations with the Indian tribes have “always been .. . anomalous . .. and of a complex character.” United States v. Kagama, 118 U.S. 375, 381, 6 S.Ct. 1109, 1112, 30 L.Ed. 228 (1886). Although we early rejected the notion that Indian tribes are “foreign states” for jurisdictional purposes under Art. Ill, Cherokee Nation v. Georgia, 5 Pet. 1, 30 U.S. 1, 8 L.Ed. 25 (1831), we have also recognized that the tribes remain quasi-sovereign nations which, by government structure, culture, and source of sovereignty are in many ways foreign to the constitutional institutions of the federal and state governments. See Elk v. Wilkins, 112 U.S. 94, 5 S.Ct. 41, 28 L.Ed. 643 (1884). As is suggested by the District Court’s opinion in this case, see supra, at 1674-1675, efforts by the federal judiciary to apply the statutory prohibitions of § 1302 in a civil context may substantially interfere with a tribe’s ability to maintain itself as a culturally and politically distinct entity.

. The Determination entered in the Bauer Good Standing matter, and some of the issues raised in Bauer v. Mohegan Council of Elders and Mohegan Tribe concern Tribal confidentiality. The Mohegan Membership Ordinance, in accordance with Mohegan custom and oral tradition, provides that enrollment and membership matters are confidential. This includes Good Standing matters and all related documents and testimony. Materials are not divested of their Tribal confidentiality when filed with the Tribal Court. The results of Good Standing matters are reported to the Tribe through publication of Determinations via Tribal media, not accessible to the general, non-Mohegan public. Notwithstanding the Tribal Court's “Memorandum of Decision on Motion for Order Sealing Court File," issued May 8, 2009 in No. CV-08-0138, these matters are protected from disclosure in accordance with Mohegan law, which the Tribal Court is obliged to follow and which has long codified the Tribe's privacy interest in enrollment and membership matters.

. See Rule V(c), Establishing the Procedures for Obtaining Judicial Review Pursuant to Article X, Sections 1 and 2(a) as approved by the Council of Elders, May 19, 2009.

. See Transcript of hearing on Motion to Amend Complaint and Request for Injunction in CV-08-0138 before the Honorable Jane Freeman, May 6, 2009, pages 33, 40-48.

. Rule 19, entitled Referrals to Council of Elders on Matters Related to Custom and Tradition, provides as follows:
Upon Motion of a party in any ease pending in the Tribal Court, or upon the Court’s own Motion, the Court may refer any matter or question related to the custom and tradition of the Mohegan Tribe to the Council of Elders. The Council of Elders may respond to any such referral in writing, or in the alternative may request that the Court accept oral testimony from a designated member of the Council of Elders, on the matter or question referred. The Court shall be guided by any opinion rendered by the Council of Elders on matters related to the custom and tradition of the Mohegan Tribe.

. In CV-08-0138, the application of the more stringent test for issuance of an injunction would have been appropriate given that the standard trajectory for a good standing matter is a reporting of the contents of the Determination to the Tribal membership shortly after issuance of the Determination. Enjoining the reporting of the Determination represented a significant alteration of the status quo warranting the more stringent test. See, e.g., Doninger v. Niehoff, 527 F.3d 41 (2d Cir.2008), citing Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir.2004) (‘‘[Wjhen the movant seeks a ‘mandatory’ injunction—that is, as in this case, an injunction that will alter rather than maintain the status quo—she must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits.”)